Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1790 | **DATE** | 6/6/2002 |
| **CASE TITLE** | Threlkeld vs. White Castle, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order on various motions in limine. Document 76-1 is grated in part and denied in part. Documents 94-1, and 97-1 are denied. Document 96-1 is denied in part and granted in part. Documents 85-1, 86-1, 87-1, 88-1, 89-1, 90-1, 91-1, 92-1, 93-1 and 95-1 are granted as unopposed. Document 120-1 is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| ✓ | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | JUN 7 2002 date docketed | | |
| | Docketing to mail notices. | | | 164 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ6 | courtroom deputy's initials | 02 JUN -6 PM 5:32 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH A. THRELKELD, )
)
    Plaintiff, )
)
v. ) No. 99 C 1790
)
WHITE CASTLE SYSTEMS, INC., an )
Illinois corporation, ANDRE )
TILLMAN, SILK WILLIAMS, RAMONA )
WILSON, ALPHONSO BELLO, M.D., )
and JACKSON PARK HOSPITAL, )
)
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

Deborah Threlkeld was arrested and taken to the hospital against her will on June 13, 1998. She sues Chicago Police Officers Silk Williams and Ramona Wilson for excessive force and unlawful detention under 42 U.S.C. § 1983,[1] and brings various state law claims against White Castle Systems, Inc., Andre Tillman, Dr. Alphonso Bello, and Jackson Park Hospital. The parties collectively filed fifty motions in limine, which I consider here.

**I. Defendants Jackson Park Hospital and Dr. Bello[2]**

Defendant Jackson Park Hospital's ("Jackson Park") motions in limine numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11 are granted as

---

[1] She has abandoned her false arrest claim against Officers Williams and Wilson.

[2] Dr. Bello joined in all thirteen of Jackson Park's motions in limine.

unopposed. I consider the remaining motions.

(10) Jackson Park moves to bar Ms. Threlkeld from offering any opinion testimony at trial because she did not file any expert witness disclosures. Ms. Threlkeld responds that Rule 26 only requires disclosure of "retained experts," and argues that she can offer opinion testimony from Drs. Kerman, Luzarevic and Bello without disclosing them. But the limitation to "retained" experts runs only to the requirement of a written report under Rule 26(a)(2)(B). Rule 26(a)(2)(A) requires disclosure of "any person" who will offer testimony as an expert under Evidence Rules 702, 703 or 705. These disclosures must be made at least 90 days before trial, see Rule 26(a)(2)(C), or the testimony may be excluded, see Rule 37(c)(1).

However, lay witnesses may offer opinion testimony without regard to 26(a)(2) if the testimony is

> (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Because the parties do not identify the substance of the doctors' opinions, I cannot now determine whether they fall within the scope of Rule 701 or 702, so the motion is denied without prejudice.

(12) Jackson Park also moves to bar any opinion testimony that was not provided in depositions in this case. Again, the parties

2

fail to distinguish between expert and lay opinions, or provide the substance of the disputed opinions. The motion is granted as to any Rule 702 expert opinions that ought to have been disclosed, but denied as to any Rule 701 lay opinions.

(13) Jackson Park argues that the Illinois Mental Health Code is inapplicable to this case, and moves that any reference to it or instructions mentioning it be barred. I held on Jackson Park's motion to dismiss that Ms. Threlkeld stated a claim for negligence based on alleged violations of the Illinois Mental Health and Developmental Disabilities Code, 405 ILCS 5/1-100, *et seq.* ("the Code"). Jackson Park raises several arguments, some old and some new, about why the Code should not apply here. I reject them all.

First, Jackson Park argues that the Code is inapplicable because Ms. Threlkeld was only treated in the emergency room, and its emergency room is not a "mental health facility" under § 1-114. One Illinois court, construing sections of Chapter 3, Article VI of the Code, which covers involuntary admission to a mental health facility, has held that under § 1-114, only the sections or units of a hospital devoted to treatment of mentally ill patients, and not the rest of the hospital or the emergency room, "are mental health facilities for the purposes of the involuntary admission provisions of the Code." *In the Matter of Moore*, 704 N.E.2d 442, 446 (Ill. App. Ct. 1998). But Ms. Threlkeld's negligence claim arises out of alleged violations of Chapter 2, Article I, which

3

establishes the rights of a "recipient of services." *See* § 2-100. A "recipient of services" is defined as "a person who has received or is receiving treatment or habilation." § 1-123. Neither "treatment" nor "habilitation" is limited to services provided by a mental health facility. *See* §§ 1-111, 1-128 (definitions say "may include, but is not limited to" certain services provided by a developmental disabilities or mental health facility); *cf.* § 1-112 (defining hospitalization exclusively as treatment by a mental health facility). Because her claims arise under §§ 2-102 and 2-107(a), and not under the involuntary admission provisions of Chapter 3, Article VI, *Moore* does not apply.

Next, Jackson Park argues that the Code should not set the standard of care. Under Illinois law, "the violation of a statute or ordinance designed for the protection of human life or property is [p]rima facie evidence of negligence." *Davis v. Marathon Oil Co.*, 356 N.E.2d 93, 97 (Ill. 1976). I resolved this question as a matter of law on Jackson Park's motion to dismiss, *see Threlkeld v. White Castle Sys., Inc.*, 127 F. Supp. 2d 996, 989 (N.D. Ill. 2001), but Jackson Park reargues the point, claiming that the Code is not designed to protect human life or property, but only the due process liberty interests of patients of mental health or developmental disabilities. The cases cited by Jackson Park do not address the question of whether the Code is a "public safety" statute that sets the standard of care for a negligence claim, and

4

these cases anyhow relate only to involuntary admission under Chapter 3, which is not at issue here. The Illinois courts have not considered whether the Code is the type of public safety statute that sets a standard of care, but I predict that they would. Looking at the statute as a whole, it is a comprehensive mental health statute, which provides for humane treatment of the mentally ill and developmentally disabled. But the Code also provides public protection for the non-mentally ill. These purposes are two sides of the same coin. On one hand, it has the purpose of protecting the public from potential harm by people who are mentally ill by allowing certain involuntary treatments. However, it also ensure that people who are *not* a danger to the public are protected from unwanted and potentially harmful medical or psychiatric treatment. Ms. Threlkeld belongs to the latter class of beneficiaries. As a separate consideration, it would be unfair to allow Jackson Park to have treated Ms. Threlkeld as mentally ill under the Code, but now claim that she is not entitled to the protections of the Code because she says she is not mentally ill.

Finally, Jackson Park argues that, although I held that § 2-102(a) applies to a recipient of services and does not require that the patient actually be admitted, a recent amendment to the Code "indicate[s] otherwise." Jackson Park points to the language about "adequate and humane care and services" in § 2-102, which is defined elsewhere as

5

services reasonably calculated to result in a significant improvement of the condition of a recipient of services confined in an inpatient mental health facility so that he or she may be released or services reasonably calculated to prevent further decline in the clinical condition of a recipient of services so that he or she does not present an imminent danger to self or others.

405 ILCS 5/1-101.2.

Jackson Park seizes on the language "recipient of services confined in an inpatient mental health facility" and argues that this shows an intent in the statute as a whole to protect only people who receive services while patients at a mental health facility, not a person who receives minimal treatment in an emergency room. The argument fails for two reasons. First, Ms. Threlkeld is not seeking relief under the "adequate and humane care and services" clause in § 2-102(a), but under the "administration of psychotropic medication" clause of that same section. Second, even if she were relying on the "adequate and humane care and services" clause of § 2-102(a), § 1-101.2 says, in addition to the language to which Jackson Park refers, "*or . . . a recipient of services.*" Ms. Threlkeld was a recipient of services, albeit unwanted, so the Code applies.

In the alternative, Jackson Park asks me to reject the plaintiff's proposed jury instructions regarding the Code in favor of Jackson Park's instructions. Jackson Park may take this issue up at the jury instruction conference at the close of the evidence. I deny the motion.

## II. Defendants Wilson and Williams

Defendants Williams and Wilson's ("the officers") motions in limine numbers 1, 3, 4, 8, 9, 14, and 15 are granted as unopposed. There are no motions numbered 11-13. White Castle joins in the officers' motions numbers 1, 7, 10, 15 and 17.

(2) The officers ask to bar reference to their attorneys as "Corporation Counsel" or "the City Lawyers." Ms. Threlkeld objects that their attorneys actually are Assistant Corporation Counsel, but attorneys are to be referred to by name only, or as "counsel," not by the name of their firm or employer. *See Sircher v. City of Chicago*, No. 97 C 6694, 1999 WL 569568, at *1 (N. D. Ill. Jul. 28, 1999) (Shadur, J.). I grant the motion.

(5) The officers ask me to bar any evidence that they violated rules or regulations or general orders of the Chicago Police department. Ms. Threlkeld argues that this evidence would show that they acted wilfully and wantonly, but she does not explain the relevance of that standard here. Wilful and wanton conduct is an exception to the immunity of public officials under the Illinois Tort Immunity Act, see 745 ILCS 10/2-202, but Ms. Threlkeld does not plead any state law claims against the officers, only a § 1983 claim. The officers argue that a breach of departmental rules and regulations is irrelevant to a violation of § 1983, and would confuse the jury about the applicable standard. *See Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (holding that violations

7

of regulations not conclusive of unreasonableness of defendant's actions under § 1983). Although not conclusive, evidence that the officers violated departmental rules and regulations may be relevant to the reasonableness of their actions. A limiting instruction would cure any potential confusion to the jury about the applicable standard under § 1983. I deny the motion.

(6) The officers ask me to bar Ms. Threlkeld from mentioning the Fraternal Order of Police, Lodge No. 7, disclaimer that appears at the top of official reports for the Chicago Police Department. Apparently, the purpose of the disclaimer is to state that a witness is not testifying voluntarily, but under a direct order of a superior officer. The officers claim that, but do not explain why, questions about this disclaimer would confuse the jury and prejudice the defendants. Ms. Threlkeld responds that the disclaimer is relevant for impeachment purposes because it advises the witness to tell the truth. Neither party provides me with the text of the disclaimer. It would be helpful, in asking me to rule on the admissibility of particular words or phrases, to provide me with the language. I cannot determine whether the disclaimer would be admissible for any purpose, so I deny the motion.

(7) The officers ask me to bar Ms. Threlkeld from referring to a "code of silence" among police officers. Any argument about a generalized cover-up scheme would be inadmissible if there were no evidence to support it, *see Sanders v. City of Indianapolis*, 837 F.

Supp. 959, 963 (S.D. Ind. 1992) (Barker, J.) ("In a court of law . . . justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices."), but it is premature to conclude that there will be no evidence to show that the officers in this case lied for their colleagues or covered anything up. I deny the motion.

(10) The officers also ask me to bar evidence that the battery charge against Ms. Threlkeld was dropped. Ms. Threlkeld argues that it is relevant to the question of whether she was actually combative when the officers arrested her; if she was, why would the charges have been dropped? Charges may be dropped for a number of reasons independent of their merits; *e.g.* the death of the only eyewitness. Innocence is not a necessary inference from dismissal of charges. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 926 (7th Cir. 2001) (In malicious prosecution context, "[t]he bare use of a *nolle prosequi* order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence.").

In any event, the question of whether Ms. Threlkeld was combative goes to her claim that she was not resisting arrest and therefore that force was unnecessary. However, eventual dismissal of charges against her is not relevant to the reasonableness of the officers' actions at the time of her arrest. For that matter, it is not clear that the existence of battery charges against her is

9

relevant at all; what is relevant are her actions and the officers' responses at the time of her arrest. Ms. Threlkeld asserts that the dismissal of charges against her is also relevant to the excessiveness of the force used by the officers, but she neither explains the point nor offers any authority, so it is waived for the purposes of this motion. *See United States v. Papia*, 910 F.2d 1357, 1363 (7th Cir. 1990) (litigant must present an argument accompanied by relevant authority). I grant the motion.

(16) Ms. Threlkeld has no objection to the officers' request that I bar reference to evidence about the misconduct of non-parties, provided that the officers do not open the door by pointing the finger at non-parties. I grant the motion subject to this condition.

(17) Finally, the officers ask me to bar any evidence "regarding allegations of mistreatment of nonparties." The sum of their argument is that any such evidence (which they do not identify) would be irrelevant and prejudicial, but they do not explain why or cite to any authority. Ms. Threlkeld argues that evidence of the officers' treatment of Ms. Threlkeld's daughter at the scene of her arrest is relevant to the officers' state of mind, which is a permissible purpose to admit so-called "other acts" evidence under Fed. R. Evid. 404(b). *United States v. Robinson*, 161 F.3d 463, 469 (7th Cir. 1998). The motion is denied.

### III. Defendant White Castle

Defendant White Castle's motions in limine numbers 2, 3, 4, 5, and 6 are granted as unopposed. No motion numbered 12 was filed. White Castle's motion in limine number 14 (joining in the officers' motions numbers 1, 7, 10, 15 and 17) is granted in part and denied in part as discussed above in section II.

(1) White Castle moves to bar any evidence, "without proper medical foundation," that Ms. Threlkeld sustained any medical injuries, and, if any, their cause and permanence. White Castle does not explain why this evidence should be inadmissible or advert to a rule of evidence, so the motion is denied as unsupported. *See Indurante v. Local 705, Int'l Bhd. of Teamsters,* 160 F.3d 364, 366 (7th Cir. 1998) ("[p]erfunctory and undeveloped assertion" waived).

(7) Again, without citing any authority, White Castle argues that Ms. Threlkeld should be barred from making any reference or innuendo that suggests that the defendants have not come forward with any evidence to refute her evidence of injury because, they argue, it would impermissibly shift the burden of proof to the defendants. I will instruct the jury on Ms. Threlkeld's burden of proof. If she has evidence of injury, it does not shift the burden to the defendants to allow her to point to an absence of contrary evidence. I deny the motion.

(8) Relying on Illinois Pattern Jury Instructions – Civil ("IPI") No. 5.01, White Castle asks me to bar reference or innuendo

that it has not called a witness that is not under its control, and that was equally available to Ms. Threlkeld, to refute any of Ms. Threlkeld's allegations. As far as I understand the objection, White Castle is asking me not to give IPI No. 5.01, which permits an inference of unfavorable testimony from a party's failure to call a witness under its control. However, White Castle is asking for a ruling as to witnesses *not* under its control, and therefore outside of the scope of IPI No. 5.01, so the instruction would not be appropriate in any event. However, because the nature of the objection is not clear and White Castle has not identified the particular witnesses to which it refers, I deny the motion.

(9) White Castle asks me to bar reference to the amounts of any medical bills unless there is evidence (in the form of a "paid" stamp or "competent medical testimony") that the bill has been paid. Ms. Threlkeld objects that there are other ways to lay the foundation for the bills. Under Illinois law, however, "in order to recover for medical and surgical expenses, it is necessary that two things be proved: first, that the claimant has paid or become liable to pay a specific amount, and second, that the charges made were reasonable charges for services of that nature." *Barreto v. City of Waukegan*, 478 N.E.2d 581, 589 (Ill. App. Ct. 1985). Payment of a bill is prima facie evidence of the reasonableness of the expense. *Id.* However, White Castle provides no authority for the proposition that a "paid" stamp or "competent medical

testimony" is necessary to establish payment or liability. I deny the motion.

(10) White Castle asks me to bar testimony from Dr. Kerman relating to Ms. Threlkeld's prognosis "where the examination of the plaintiff took place several years before trial." It cites *Thurmond v. Monroe*, 601 N.E.2d 1048 (Ill. App. Ct. 1992), which noted that prognosis testimony must be based on a recent examination. *Id.* at 1055. Ms. Threlkeld argues that this is a question of weight rather than admissibility. Nevertheless, admission of opinion testimony in federal court is governed by the Federal Rules of Evidence, not by state rules. *See Stutzman v. CRST, Inc.*, 997 F.2d 291, 295 (7th Cir. 1993). White Castle has not provided any basis for excluding Dr. Kerman's prognosis opinion under the Federal Rules, nor am I aware of any federal authority for the cited proposition, so I deny the motion.

(11) White Castle moves to bar evidence of other incidents in which Andre Tillman has arrested or handcuffed people, arguing that they are not relevant. Ms. Threlkeld responds that any prior incidents are relevant to White Castle's knowledge of "Andre Tillman's propensity toward violence," which, she argues, would give rise to a duty on the part of White Castle to protect her.

The real issue, not explicitly raised by either party, is whether evidence of the other incidents would be admissible under Fed. R. Evid. 404(b), which disallows such evidence to demonstrate

13

propensity, but allows it to show knowledge, among other things. Ms. Threlkeld does not bring a negligent hiring claim; her theory against White Castle in Count I of her complaint is agency, or *respondeat superior*. She has not demonstrated why White Castle's knowledge would be relevant to this theory. Moreover, she admits that she wants to use the evidence to show Andre Tillman's propensity toward violence. This purpose is explicitly prohibited by Rule 404(b), so I grant the motion.

(13) White Castle asks me to bar reference to any other law suits involving it or its security guards on the grounds of relevance. Ms. Threlkeld argues that the other lawsuits are relevant to the extent that they might show that White Castle has taken inconsistent positions on the issue of whether its security guards are agents. However, even if they do, any estoppel argument would be resolved by me as a matter of law, not by the jury. Ms. Threlkeld responds additionally that any lawsuits involving Mr. Tillman or the White Castle restaurant in this case would be relevant, but she does not explain why. Conclusory statements are insufficient, see *Indurante*, 160 F.3d at 366, so I grant the motion.

## IV. Conclusion

The plaintiff filed seven motions in limine and no defendant filed any response, so all of the plaintiff's motions are GRANTED as unopposed. Jackson Park's motions numbers 1, 2, 3, 4, 5, 6, 7, 8,

14

9, and 11 are GRANTED as unopposed; number 12 is GRANTED IN PART and DENIED IN PART; numbers 10 and 13 are DENIED. The officers' motions numbers 1, 3, 4, 8, 9, 14 and 15 are GRANTED as unopposed; numbers 2, 10 and 16 are GRANTED; numbers 5, 6, 7 and 17 are DENIED. White Castle's motions numbers 2, 3, 4, 5 and 6 are GRANTED as unopposed; number 14 is GRANTED in part and DENIED in part; numbers 11 and 13 are GRANTED; numbers 1, 7, 8, 9 and 10 are DENIED.

ENTER ORDER:

*Elaine L. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: June 6, 2002